UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/21/2018

---

ROBENSON GUY JOSEPH,

               Petitioner,

    v.

DIRECTOR THOMAS DECKER,
SECRETARY KIRSTJEN NIELSEN,
ATTORNEY GENERAL JEFFERSON B.
SESSIONS III, and U.S. DEPARTMENT OF
HOMELAND SECURITY,

               Respondents.

No. 18-CV-2640 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Robenson Guy Joseph is a citizen of Haiti and a lawful permanent resident of the United States. He was arrested and detained on September 20, 2017, when the Department of Homeland Security ("DHS") charged him as removable for having committed an "aggravated felony." *See* 8 U.S.C. § 1227(a)(2)(A)(iii). For over fourteen months since then, Joseph has been in civil detention. Meanwhile, a Supreme Court decision precluded the primary—if not the only—reasoned legal basis that DHS had presented for seeking Joseph's removal, and an immigration judge granted Joseph's request to terminate his removal proceedings. DHS is presently appealing the immigration judge's decision to the Board of Immigration Appeals ("BIA"). This case is about whether, and the conditions under which, DHS may continue to detain Joseph during the pendency of that appeal.

For the reasons explained below, this Court concludes that Joseph is constitutionally entitled to receive a supplemental bail hearing at which DHS must prove, by clear and convincing evidence, that his detention continues to be necessary despite the immigration judge's decision in

his favor. The Court therefore grants in part Joseph's Second Amended and Supplemental Petition for Writ of Habeas Corpus (the "Second Amended Petition") and orders Respondents to take Joseph before an immigration judge within seven days for an individualized bond hearing in accordance with this Opinion and Order, or otherwise release him.

## BACKGROUND

### I.     Underlying Criminal Conviction

Joseph was born in Haiti and lived there until he was admitted to the United States as a lawful permanent resident at the age of 19. He left under traumatizing circumstances; as a teenager, Joseph had been targeted, beaten, and nearly killed in retaliation for his family's political activities in Haiti. *See* Second Am. Pet. ¶ 26 (Dkt. 35). Joseph arrived legally in the United States in 1995 and built his adult life here. He has four U.S. citizen children and, before his detention, lived near and cared for his mother, who is also a lawful permanent resident. *See* Second Am. Pet. ¶¶ 1, 28.

After living in the United States for nearly 20 years, he was convicted by guilty plea in New York county court for attempted assault in the second degree under New York Penal Law §§ 110 and 120.05. *See* Second Am. Pet. ¶ 29. On June 2, 2015, Joseph was sentenced to time served and five years of probation for that offense. The county court, in its Uniform Sentence and Commitment from that day, noted that the date of the offense was December 13, 2014, and it stated in two places that the relevant "Law/Section & Subdivision" of conviction was "110/120.05-02". *See* Dkt. 21-3. Less than one year later, Joseph violated the conditions of his probation. *See* Second Am. Pet. ¶ 29. In March 2016, the county court resentenced him to one year in prison for

his December 13, 2014 offense. *See* Dkt. 24-4. This time, the Uniform Sentence and Commitment identified § 110.00 and § 120.05-01, rather than § 120.05-02, as the relevant statutes. *See id.*[1]

## II. Immigration Proceedings and Legal Background

On September 20, 2017, DHS and United States Immigration and Customs Enforcement ("ICE") commenced removal proceedings against Joseph by serving him with a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an "aggravated felony." *See* NTA at 3 (Dkt. 21-6). As relevant here, an aggravated felony includes any attempt to commit a "crime of violence" as defined by 18 U.S.C. § 16 for which the term of imprisonment is at least one year. *See* 8 U.S.C. § 1101(a)(43)(F), (U). 18 U.S.C. § 16, in turn, divides the definition of "crime of violence" into two parts. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018). Under § 16(a), also called the "elements clause," *see id.*, a crime of violence includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" *See* 18 U.S.C. § 16(a). Under § 16(b)—the so-called "residual clause," which was recently declared unconstitutional, *see Dimaya*, 138 S. Ct. at 1223—a crime of violence further includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See* 18 U.S.C. § 16(b). Joseph's Notice to Appear did not specify whether he was being charged as removable under § 16(a) or (b), either or both of which might have been the basis for his charge at the time.

On the day Joseph was served with the Notice to Appear, he was arrested and placed in civil immigration detention in county jail pending the completion of his removal proceedings. *See*

---

[1] There has been some dispute about which subsection applied to Joseph's offense. *See, e.g.,* Hearing Trans. at 4 (Dkt. 21-8). This Court need not resolve that dispute.

Second Am. Pet. ¶¶ 30, 39.[2] The relevant statutory provisions with respect to Joseph's civil detention are 8 U.S.C. § 1226(a) and § 1226(c)(1)(B). Under § 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Pending such a decision, the Attorney General "may continue to detain the arrested alien" or may release the alien if certain conditions are met and the alien does not fall within § 1226(c). *See* 8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Under § 1226(c)(1)(B), however, "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any" aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), among other offenses, and generally may not release the alien on bail or otherwise. *See* 8 U.S.C. §§ 1226(c)(1)(B), (c)(2).

In November 2017, Joseph filed with the immigration judge a motion to terminate his removal proceedings. *See* Mot. to Terminate (Dkt. 21-7). Joseph argued that he had not committed a qualifying aggravated felony because the residual clause of § 16(b) should be deemed unconstitutionally void for vagueness. He also disputed the applicability of the elements clause under § 16(a), in part because he asserted that the record was unclear as to which subsection of New York Penal Law § 120.05 applied to his conviction. *See* Mot. to Terminate at 3–6. At a hearing on November 21, 2017, DHS did not say much in response to Joseph's motion. *See* Second Am. Pet. ¶ 34. DHS did appear to argue, however, that § 120.05-01 was the proper subsection for his conviction. *See* Hearing Trans. at 4:3–22 (Dkt. 21-8). The immigration judge was apparently persuaded by this argument and accordingly denied the part of Joseph's motion that rested on the

---

[2] Joseph was initially detained at Orange County Correctional Facility, but after a few months he was moved to Hudson County Jail in New Jersey, where he is still detained. *See* Second Am. Pet. ¶ 30.

uncertainty regarding the relevant provision. *See id.* at 5:9–14, 8:20–9:8. The judge did not explicitly address the merits of Joseph's arguments with respect to the residual and elements clauses' threshold applicability. Ultimately, the judge set a date for an additional hearing for a few months later. *See id.* at 10–11, 15.

While Joseph waited in detention for a merits determination on his removability, the question arose as to whether he should receive a bond hearing. Joseph had not received a bond hearing because the basis for his detention—initially at least—was § 1226(c), which mandates detention except in certain (inapplicable) circumstances. At the time Joseph was arrested, however, the Second Circuit had established a bond-hearing requirement for aliens detained under that provision. In *Lora v. Shanahan*, the Second Circuit interpreted § 1226(c) to avoid what the Circuit considered to be the "serious constitutional concerns" of indefinite mandatory detention. 804 F.3d 601, 614 (2015), *cert. granted and vacated*, 138 S. Ct. 1260 (2018) (Mem.). According to *Lora*, Supreme Court precedent "clearly establish[ed] that mandatory detention under section 1226(c) [was] permissible, but that there [needed to] be some procedural safeguard in place for immigrants detained for months without a hearing." *Id.* Under the canon of constitutional avoidance, therefore, the Circuit held that § 1226(c) "must be read as including an implicit temporal limitation." *Id.* Following the Ninth Circuit, it further determined that aliens detained must receive a bond hearing within six months of their detention and that detainees "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* at 616. If nothing had changed, *Lora* would have required DHS to provide Joseph with a bond hearing no later than March 20, 2018.

But something did change. On February 27, 2018, the Supreme Court decided *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and within a week it had vacated *Lora* for reconsideration in light of that decision, *see Shanahan v. Lora*, 138 S. Ct. 1260 (2018) (Mem.). In *Jennings*, the Supreme Court rejected constitutional avoidance as a tool for interpreting § 1226(c), holding that the provision's text "authorize[s] detention until the end of applicable proceedings" subject only to "express exceptions." *See* 138 S. Ct. at 842. The Supreme Court further held that there was no "arguable statutory foundation" under § 1226(a) for requiring "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.* at 842, 847–48. The Supreme Court left open, however, the questions of when and under what circumstances the Constitution may place limits on the detention of particular aliens pending the conclusion of their removal proceedings. *Id.* at 851 (remanding for the Court of Appeals to consider "in the first instance" the parties' constitutional arguments on their merits).

Despite the Supreme Court's holding in *Jennings* and the vacatur of *Lora*, Joseph submitted a request for a bond hearing in a letter dated March 12, 2018. *See* Request for Bond Hearing (Dkt. 1-4). In that letter, Joseph argued that his ongoing and prolonged detention was unconstitutional. Alternatively, he repeated his argument that he was not removable for any qualifying aggravated felony and further asserted that, as a consequence, he was not "deportable" under § 1226(c). He thus contended that § 1226(a), rather than (c), applied to his detention. Joseph requested that the bond hearing be held in conjunction with his merits hearing that was scheduled for March 26, 2018. On that day, however, Joseph's counsel was forced to seek an adjournment due to a death in her family. The immigration judge rescheduled the hearing for May 18, 2018, which was her first available date. *See* Hearing Trans. at 21–22.

Before that hearing could be held, however, the Supreme Court issued another decision with a direct impact on Joseph's case: *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). In that case, the Supreme Court held that the residual clause of § 16(b), as incorporated into the Immigration and Nationality Act through 8 U.S.C. § 1101(a)(43)(F), was unconstitutionally void for vagueness. *Dimaya*, 138 S. Ct. at 1223. That decision left untouched the elements clause of § 16(a), but it confirmed at least half of Joseph's original argument for terminating the proceedings against him.

One week after *Dimaya* came down, on April 24, 2018, the immigration judge in this case held a bond hearing for Joseph. *See* Zabbia Decl. ¶ 5 (Dkt. 34). In doing so, the immigration judge may have presumed (or decided) that 8 U.S.C. § 1226(a), rather than § 1226(c), governed Joseph's request for a bond hearing.[3] In accordance with applicable regulations and BIA decisions, the burden of proof was on Joseph to demonstrate at that hearing that he was not a danger to the community or a flight risk. *See* 8 C.F.R. § 236.1(c)(8); *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The immigration judge ultimately found that Joseph had failed to meet that burden due to his criminal history and denied his bail request. *See* Zabbia Decl. ¶ 5.

At the bond hearing, the parties also discussed the legal basis for continuing removal proceedings against Joseph. Joseph's counsel argued that the proceedings should be terminated outright in light of *Dimaya* and that the elements clause was not a valid basis for removal. *See* Second Am. Pet. ¶¶ 45–46. DHS counsel conceded that the residual clause was no longer available, but she asserted—without additional argument—that the removal proceedings could

---

[3] The parties dispute the statutory basis for Joseph's continued detention. *Compare* Second Am. Pet. ¶ 47 & n.6 (Dkt. 35) (arguing that the immigration judge "made it clear that Mr. Joseph was not subject to mandatory detention" by captioning "her oral decision as a bond decision" under § 1226(a)), *and* Pet'r's Reply Br. at 6–7 (Dkt. 36) (same), *with* Resp't Opp. Br. at 5, 18 (Dkt. 33) (noting that the immigration judge "applied the standards governing release on bond under 8 U.S.C. § 1226(a)," but arguing that Joseph "is detained pursuant to 8 U.S.C. § 1226(c)"). For the reasons explained below, however, this Court need not resolve that dispute.

continue under the elements clause. *See* Second Am. Pet. ¶¶ 43–44. The immigration judge did not address the termination question at the bond proceeding and appears not to have considered it in making her bond determination. *See* Second Am. Pet. ¶ 46.

On May 7 and May 9, Joseph and DHS both submitted additional papers to the immigration judge with respect to Joseph's removability. Joseph's May 7 letter requested an "urgent" master calendar hearing to address the question of his removability. *See* Dkt. 21-11. Two days later, DHS submitted a "statement" of one paragraph, stating simply that Joseph remained removable under the elements clause, § 16(a), and that "[a] more fulsome memorandum of law outlining this position [would] be forthcoming." *See* Dkt. 21-12. DHS never filed additional briefing. At the master calendar hearing on May 18, DHS did not provide meaningful additional support for its position, while Joseph again challenged the basis for his removability. *See* Hearing Trans. at 31, 36–37. The immigration judge adjourned the case yet again to allow both parties to file more complete briefing on the relevant issues. *Id.* at 37–39. Joseph filed such a brief, but DHS did not. *See* Renewed Mot. to Terminate (Dkt. 21-13). On June 7, the immigration judge held another master calendar hearing. *See* Second Am. Pet. ¶ 52.

Finally, on June 27, 2018, the immigration judge granted Joseph's renewed motion to terminate the proceedings against him. The immigration judge concluded that § 120.05-01 did not qualify as a crime of violence under the elements clause, adopting Joseph's arguments on the issue—arguments to which the DHS had never substantively responded. *See* Decision and Order of the Immigration Judge (Dkt. 35-2). DHS later moved for the immigration judge to reconsider her order and filed an appeal with the BIA. *See* Dkt. 32-2. In the meantime, Joseph has remained in detention.

### III. Procedural History of this Habeas Proceeding

Joseph filed a habeas petition in this case against DHS and various affiliated individuals in their official capacities on March 27, 2018. Since then, and in light of the events that followed his first petition, he filed his First Amended Petition on May 11, 2018, and his Second Amended Petition on July 10, 2018. Respondents opposed the Second Amended Petition, and this Court held oral argument on it.

## DISCUSSION

In Joseph's Second Amended Petition, he seeks habeas relief on both statutory and constitutional grounds, arguing for immediate release from civil immigration or, alternatively, a supplemental bond hearing where, unlike at his first bond hearing, DHS would bear the burden of demonstrating the necessity of his continued detention by clear and convincing evidence. *See* Second Am. Pet. at 26. For the reasons explained below, the Court denies the first request but finds that Joseph is entitled, as a matter of procedural due process, to receive the supplemental bond hearing that he seeks.

### I. Threshold Questions

As an initial matter, Respondents assert that Joseph's Second Amended Petition should be denied without reaching its merits on three distinct grounds: jurisdiction, exhaustion, and waiver. The Court disagrees.

#### A. Jurisdiction

This Court has jurisdiction over this action because it presents federal questions under 28 U.S.C. § 1331 and is a habeas petition under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *See Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003)

(internal quotation marks omitted); *see also Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018). This jurisdiction extends to claims by noncitizens like Joseph who challenge the constitutionality or statutory authorization of their detention—at least so long as the arguments do not relate to the ultimate question of removability or to unreviewable discretionary determinations. *See, e.g., Michalski v. Decker*, 279 F. Supp. 3d 487, 492–95 & n.3 (S.D.N.Y. 2018).

Respondents argue that 8 U.S.C. § 1226(e), § 1252(b)(9), and § 1252(g) all bar this Court's review of Joseph's petition. *See* Resp't Opp. Br. at 7–11 (Dkt. 33). Those provisions limit this Court's jurisdiction to review ultimate questions of removability, challenges to discretionary decisions by immigration judges with respect to detention or release, and challenges "arising from [a] decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders" against an alien. *See* 8 U.S.C. §§ 1226(e) (discretionary judgments), 1252(b)(9) (questions of removability), 1252(g) (decisions to commence, adjudicate, and execute). The Supreme Court has clearly rejected those statutes' applicability to constitutional and statutory-framework arguments like those at issue here. *See, e.g., Jennings*, 138 S. Ct. at 839–41 (plurality, joined by dissenters) (addressing § 1226(e) and § 1252(b)(9)); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (addressing § 1226(e)); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (addressing § 1226(e), § 1252(g), and other provisions); *see also Michalski*, 279 F. Supp. 3d at 492–95 (addressing § 1226(e), § 1252(b)(9), § 1252(g), and other provisions). This Court sees no need to rehash those cases' well-established reasoning, particularly given that Respondents' counsel conceded at oral argument that this Court has jurisdiction over such arguments in Joseph's petition. *See* Oral Arg. Trans. at 29 (Dkt. 42). To the extent that Joseph seeks review of the immigration judge's exercise of discretion in denying Joseph bail at his prior proceedings, or a determination with respect to any

questions relating to his ultimate removability, this Court lacks jurisdiction. The parties must instead raise such arguments with the BIA and, ultimately, appeal the relevant determinations to the Second Circuit. *See* 8 U.S.C. §§ 1226(e), 1252(b)(9). Otherwise, however, this Court has jurisdiction over Joseph's statutory and constitutional challenges to his ongoing civil detention.

## B.    Exhaustion

Respondents more seriously argue that Joseph's claims are barred because he did not exhaust his administrative remedies prior to filing his habeas petition. This argument fails as the remedies Petitioner seeks—immediate release prior to a supplemental bond hearing or a shifted burden at such hearing—are ones the BIA will not provide based on its own precedent.

Although "[t]here is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus," courts generally do require such exhaustion "as a prudential matter." *Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (citations omitted). This prudential exhaustion requirement aims to provide the agency with a chance to correct its own errors, "protect[] the authority of administrative agencies," and otherwise conserve judicial resources by "limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003) (citation omitted); *see also Abbey v. Sullivan*, 978 F.2d 37, 44–45 (2d Cir. 1992). When these purposes are not served by requiring exhaustion, exhaustion may be excused through four "established exceptions." *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995). Specifically, "[e]xhaustion of administrative remedies may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be

futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Id.* (citation omitted). The application of these exceptions must "be guided by the policies underlying the exhaustion requirement." *See Abbey*, 978 F.2d at 45 (citation omitted).

Joseph did not exhaust his present claims by raising them with the immigration judge and appealing them to the BIA. Nor has he requested a new bond hearing since the immigration judge terminated his proceedings. The key question, therefore, is whether his failure to exhaust is excused. Respondents contend that none of the prudential exceptions apply here. Specifically, they assert that "the BIA could have ruled and still can rule" on his claims for relief, including Joseph's challenges to longstanding BIA decisions such as those placing the burden of proof on the alien at immigration bond hearings. *See* Resp't Opp. Br. at 14. According to Respondents, Joseph should have challenged the burden of proof at his initial bond hearing and then appealed the result of the hearing to the BIA. Respondents further assert that incarceration alone does not qualify as an irreparable injury and that Joseph has not raised a substantial constitutional question in his petition. *See id.* at 15. Joseph responds that he has suffered and will continue to suffer irreparable injury due to his detention, that he raises a substantial constitutional question, and that exhaustion before the immigration judge and BIA would have been futile. *See* Pet'r's Reply Br. at 10 (Dkt. 36).

Regardless of whether Joseph's detention and its attendant consequences amount to irreparable harm, exhaustion is excused here because any administrative appeal would have been futile and unable to address Joseph's substantial constitutional claims. The two remedies Petitioner seeks in the alternative from this Court—immediate release without another bond hearing or a supplemental bond hearing with the burden of proof on the Government—are foreclosed at the BIA based on existing administrative precedent. The first remedy is plainly one

the BIA would reject, because, as a statutory requirement, the only way an individual may be released is through bond or conditional parole. 8 U.S.C. § 1226(a) (providing bond and conditional parole as the only two means of release). Moreover, his claim for immediate release, as discussed below, is premised on a constitutional challenge to the BIA's interpretation of § 1226(a), making any such claim to that same administrative body futile.

The second remedy Joseph seeks is a supplemental bond hearing where the Government is required to prove by clear and convincing evidence that his continued detention is necessary. This constitutional remedy, based on alleged due process violations, would be futile to seek from the BIA, for reasons similar to those above. This precise issue was addressed in this district just days ago in *Brevil v. Jones*, No. 17-CV-1529 (LTS) (GWG), 2018 WL 5993731 (S.D.N.Y. Nov. 14, 2018), where the court found that "appeal of the immigration judge's bond determination to the BIA would have been futile because [the petitioner] challenges the constitutionality of the burden of proof applicable to that hearing, and the BIA had already determined that '[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond.'" *Id.* at *3 (citing *In re Guerra*, 24 I. & N. Dec. at 40); *see also* 8 C.F.R. § 1236.1(c)(8). The Court finds this reasoning persuasive. Even if Joseph received another bond hearing, there would be no purpose in raising his burden-of-proof arguments before the immigration judge or appealing them to the BIA. Any future hearing would, like his first one, be conducted in accordance with longstanding BIA precedent and government regulations placing the burden of proof on Joseph. Joseph's constitutional challenges to those longstanding practices "lie outside the BIA's jurisdiction," which means the agency would likely have no ground to overturn its precedent with respect to the burden of proof at bond hearings. *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002). Where, as here, "the challenge is to regulations [and

precedent that are] promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct," exhaustion is futile and thus does not serve the policies of judicial efficiency or allowing the agency to correct its own errors. *See Abbey*, 978 F.2d at 45.

Moreover, as discussed below, Joseph's constitutional claim is not just substantial, but ultimately prevailing. At its core, Joseph's Second Amended Petition does not challenge the agency's "compliance with [its] own regulations" or some procedural irregularity that the agency could remedy on its own. *Iturralde-Manosalva v. Reno*, No. 00-CV-9735 (BSJ), 2001 WL 1398689, at *2 n.1 (S.D.N.Y. Nov. 9, 2001) (noting that such challenges are "not the sort of constitutional claim[s] that warrant[] excusing exhaustion"). Rather, Joseph challenges the constitutionality of the very practices which were and are applied to him in his present circumstances. Such constitutional challenges "are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to" deciding them. *See Califano v. Sanders*, 430 U.S. 99, 109 (1977).

Respondents argue that this constitutional exception should not apply because, if Joseph had appealed his initial bond determination to the BIA, the BIA might have released him and, thus, may have mooted the relief he seeks here. A similar argument might be made for requiring Joseph to ask the immigration judge anew for a hearing in light of his changed circumstances and then to appeal any unfavorable result from such a hearing. *See* 8 C.F.R. § 1003.19(e). The BIA could release him, either through such an appeal or by affirming the immigration judge's termination of proceedings. That release, if granted, would moot his petition even if the agency did not directly address the substance of his present constitutional claims. A few courts in this district have recognized that the purposes of requiring exhaustion are well served when exhaustion could moot

constitutional questions. *See Michalski*, 279 F. Supp. 3d at 496–97; *Bogle v. DuBois*, 236 F. Supp. 3d 820, 823 n.6 (S.D.N.Y. 2017); *Nativi*, 2017 WL 281751, at *2–3. But none of those cases raised the serious risk of futility present here.[4]

Finally, that Joseph's removal proceedings have been terminated does not alleviate the risk of futility where the burden at any subsequent hearing would remain the same. *See Soto v. Sessions*, No. 18-CV-2891 (EMC), 2018 WL 3619727, at *2 (N.D. Cal. July 30, 2018) (finding, for purposes of exhaustion only, that the termination without prejudice of a petitioner's removal proceedings "is not likely to change th[e] calculus" of a bond denial, absent a change in the burden of proof). Here, this Court is convinced that it is the only entity able to address Joseph's substantial constitutional claims and that any attempt to receive relief from the agency would pointlessly prolong a detention that is already pushing constitutional bounds. For these reasons, this Court declines to dismiss the petition for lack of exhaustion.

### C. Waiver

Respondents also assert that Joseph, through his conduct before the immigration judge, has waived his claims here. Waiver may be a ground for denying relief if a party fails to raise an objection at an earlier stage of a proceeding and, in doing so, intentionally abandons or relinquishes a known right. *See generally United States v. Spruill*, 808 F.3d 585, 596–97 (2d Cir. 2015) (gathering cases). "Forfeiture," meanwhile, may occur where a party fails to assert an objection "due to mistake or oversight." *See id.* at 596. Courts generally retain "broad discretion" to

---

[4] *See Michalski*, 279 F. Supp. 3d at 495–96 (addressing only the constitutional and irreparable injury exceptions); *Bogle*, 236 F. Supp. 3d at 823 n.6 (noting that the petitioner did not argue that the futility exception applied); *Nativi*, 2017 WL 281751, at *3 (holding that administrative appeal would not be futile and that the constitutional issues were not sufficient to waive the exhaustion requirement, in part due to the possibility that the petitioner's "procedural due process claim could also be addressed head-on by the BIA"). *See Brevil*, 2018 WL 5993731, at *3 ("[U]nlike Brevil, the petitioners in [*Bogle, Nativi*, and several other cases] challenged the immigration judge's application of a legal standard, not the constitutional sufficiency of the standard itself.").

consider arguments even if they were not raised at an earlier stage in the proceedings. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 137 n.18 (2d Cir. 2011) (internal quotations omitted).

Respondents argue that Joseph waived—or perhaps forfeited—his claims in two ways. First, they assert that Joseph accepted the validity of his detention pending a government appeal. In a letter to the immigration judge in May 2018, Joseph wrote that he "would remain detained if ICE elect[ed] to appeal the case." *See* Dkt. 1-4. At oral argument, Respondents asserted that this, at the very least, should act as a concession with respect to longstanding BIA decisions and practices. Recognizing a reality, however, does not act as a concession of validity—particularly given that challenging the reality before the immigration judge would likely have been futile precisely due to the longstanding BIA decisions and practices noted by Respondents. Second, Respondents argue that Joseph has waived any challenge with respect to the appropriate burden of proof at bond hearings because he failed to challenge that burden scheme before the immigration judge. Joseph's arguments here, however, are made in light of a new set of circumstances that did not exist at the time he sought his first bond hearing. Under these circumstances, Joseph has neither waived nor forfeited his claims. Even if he had done so to some limited extent, Respondents have cited no legal principle preventing this Court from exercising its discretion to address his arguments on the merits regardless.

## II.    Merits

In Joseph's Second Amended Petition for habeas relief, he purports to make a statutory argument, a substantive due process argument, and a procedural due process argument. These arguments, however, overlap substantially. His statutory argument relies on the canon of constitutional avoidance to interpret the scope of 8 U.S.C. § 1226(a) and thus embeds within it a

facial constitutional challenge to that provision, while his as-applied due process challenge to his detention incorporates both procedural and substantive components. For the reasons that follow, the Court rejects Joseph's statutory and facial constitutional challenges to 8 U.S.C. § 1226(a), but grants in part Joseph's petition with respect to his as-applied challenges.

### A.     Statutory and Facial Constitutional Challenges

As explained above, 8 U.S.C. § 1226(a) provides that, "pending a decision on whether [an] alien is to be removed from the United States," the Attorney General "may continue to detain the arrested alien." According to Joseph, this provision should be construed to permit the detention of noncitizens only when they are "in active removal proceedings"—*e.g.*, when they have not had those proceedings terminated by the immigration judge. *See* Second Am. Pet. ¶ 58. He draws this interpretation from the phrase "may continue to detain," which he argues is ambiguous and would raise serious constitutional concerns if interpreted otherwise. *See* Second Am. Pet. ¶ 78. He thus asserts that *any* detention of aliens during the pendency of the government's appeal from a non-final order terminating immigration proceedings is unconstitutional, or at the very least raises such doubts as to the statute's constitutionality as to justify the use of the constitutional-avoidance canon.

The canon of constitutional avoidance may be invoked when there is "a serious doubt" as to the constitutionality of a statute for which a constitutional construction is "fairly possible," and it is necessary to adopt that construction to avoid a constitutional question that could result in the statute's invalidation. *Zadvydas*, 533 U.S. at 689 (citations omitted); *see also United States v. All Right, Title & Interest in Real Prop. & Bldgs.*, No. 90-CV-1818 (LBS), 1991 WL 4545, at *3 (S.D.N.Y. Jan. 15, 1991) ("The doctrine of constitutional avoidance requires courts to consider

whether a construction of the challenged statute is fairly possible such that facial constitutional challenges may be avoided.").

Joseph's constitutional-avoidance argument fails because he has not raised any serious doubt as to § 1226(a)'s facial constitutionality. Indeed, this Court has no doubt that, in at least some circumstances, the Attorney General "may continue to detain" an alien pending the government's appeal of an immigration judge's decision to terminate removal proceedings. This is fatal to a facial constitutional challenge, which must show that "no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Even if § 1226(a) were interpreted to permit detention of all aliens whose removal proceedings have been terminated, a facial challenge to this statute, interpreted as such, would fail, as some set of circumstances exist where this detention will be constitutionally valid, based on principles laid out in *Demore v. Kim* and other Supreme Court cases.

In *Demore v. Kim*, the Supreme Court held that mandatory immigration detention under § 1226(c) was facially constitutional because that provision "governs detention of deportable criminal aliens *pending their removal proceedings*" and "[s]uch detention necessarily serves the [valid immigration] purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *See* 538 U.S. at 527–28 (2003). Although detention under § 1226(a) is discretionary and § 1226(c) is mandatory, the purposes of detention under § 1226(c) apply with equal force to detention under § 1226(a): detention pending the completion of removal proceedings prevents potentially deportable aliens "from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *See id.* And that purpose is not necessarily undermined if an immigration judge has

ruled in an alien's favor. In a real sense, immigration proceedings as to noncitizens in that position are still "active," to use Joseph's terminology, because—at least as long as the government timely appeals from the immigration judge's order—the BIA may reverse the immigration judge and order the alien removed. With that possibility may come a risk of flight in certain cases, which may in turn justify continued detention pending appeal. Thus, as a facial matter at least, the Supreme Court's unequivocal holding in *Demore* applies here: "Detention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531.[5] With no serious doubt as to the constitutionality of the statute, there is no reason to analyze other interpretations of § 1226(a). The crux of this case, therefore, is whether the process afforded in prolonged detention is constitutionally permissible as applied to this case.

**B.     Due Process**

Although § 1226(a) and § 1226(c) are facially constitutional and authorize Joseph's detention as a statutory matter, Joseph's continuing detention must also be consistent with substantive and procedural due process principles as they are applied to him. *See Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *4 (S.D.N.Y. Oct. 17, 2018) ("*Jennings* explicitly left open the question of what constitutional procedural protections are required."). Substantive and procedural due process are related but distinct concepts: "The substantive issue involves a definition of the protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it. The procedural issue concerns the minimum procedures required by the Constitution for determining that the individual's liberty

---

[5] This holding does not preclude as-applied challenges. *See id.* at 530–31; *see also Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018) (noting that the *Demore* Court "limited its holding to a brief period of detention").

interest actually is outweighed in a particular instance." *Washington v. Harper*, 494 U.S. 210, 220 (1990) (internal quotations and alterations omitted).

### 1. Identification of the Due Process Right

Joseph argues that substantive due process principles make it unconstitutional to continue detaining any alien whose removal proceedings have been terminated by an immigration judge. In the event that immediate release is not constitutionally required, he alternatively argues for additional procedural safeguards. These two arguments appear to be premised on distinct theories as to the fundamental substantive due process right at issue. This Court thus "must begin with a careful description of the asserted right" and exercise "utmost care" before "break[ing] new ground in this field." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citation omitted).

Joseph's argument with respect to the need for procedural safeguards breaks no such new ground. It is well established (1) that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings[,]" *see Demore*, 538 U.S. at 523 (citation omitted), and (2) that noncitizens in such proceedings have a liberty interest in having their detention bear a "reasonable relation to the purpose for which" they were committed in the first place, *see Zadvydas*, 533 U.S. at 690 (citation omitted). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," and courts have taken great care "not to 'minimize the importance and fundamental nature' of the individual's right to liberty." *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citations omitted). In the immigration context, that fundamental right has been limited somewhat in recognition of Congress's broad power to "make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522 (citation omitted). Even so, Congress's power has limits. Civil immigration detention may not, for example, continue if it is no longer reasonably related to valid immigration purposes,

which include "ensuring the appearance of aliens at future immigration proceedings" and protecting the community from danger. *See Zadvydas*, 533 U.S. at 690; *see also Demore*, 538 U.S. at 528 (purpose of preventing flight); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011) (purposes of preventing flight and danger), *abrogation on other grounds recognized by Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). Joseph's procedural due process argument, as discussed below, is thus on solid constitutional footing. *Cf. Flores*, 507 U.S. at 301–02 (noting that due process includes a substantive component "which forbids the government to infringe on 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest").

To grant Joseph immediate release, however, this Court would likely have to invent a new fundamental liberty interest for substantive due process purposes. Joseph contends that, any time an immigration judge rules in an alien's favor and terminates removal proceedings, additional detention is a *per se* constitutional violation regardless of the process provided. *See* Second Am. Pet. ¶¶ 84–87. The creation of such a new right is disfavored. *See id.* at 302. Given the political branches' "responsibility for regulating the relationship between the United States and our alien visitors," *see Mathews v. Diaz*, 426 U.S. 67, 81 (1976), and the Supreme Court's declaration that detention during removal proceedings is generally permissible, *see Demore*, 538 U.S. at 531, this Court sees no basis for breaking such new ground.

There remains no doubt, however, that Joseph is entitled to adequate procedural safeguards to protect his right to be free from arbitrary or "unreasonable" civil detention. *See Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018). The procedural safeguards discussed below, therefore, must be designed to protect this fundamental

right, with the recognition that, if Joseph's detention is serving one of the purposes of the immigration laws, his due process rights will not be violated. *See Demore*, 538 U.S. at 527–28.

## 2. Procedural Due Process

Joseph next argues that, as a matter of procedural due process, he is entitled to a bond hearing at which DHS must bear the burden of proving by clear and convincing evidence that his continued detention is reasonably related to valid immigration purposes. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus, whether statutorily permissible immigration detention is constitutional in this case "must be decided using an as-applied, fact-based analysis" to assess the reasonableness of the continued detention without a bond hearing, in light of Joseph's changed circumstances, and the procedural safeguards necessary to protect Joseph's due process rights. *Sajous*, 2018 WL 2357266, at *8. Numerous courts have addressed similar questions in the context of prolonged immigration detention under § 1226(a) and (c) post *Jennings*, and the vast majority have concluded that the government must provide an individualized bail hearing and prove by clear and convincing evidence that the detention remains necessary.[6] The precise factual scenario here, however, appears to be one of first impression. Unlike the other cases where the issue of prolonged detention has arisen, Joseph has also received a merits determination by an immigration judge in his favor.

---

[6] *See, e.g., Sajous*, 2018 WL 2357266, at *8; *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *6 (S.D.N.Y. Aug. 20, 2018); *Hernandez*, 2018 WL 3579108, at *3; *Brissett v. Decker*, 324 F. Supp. 3d 444, 455 (S.D.N.Y. 2018); *Lett v. Decker*, No. 18-CV-4302 (JCM), 2018 WL 4931544, at *6 (S.D.N.Y. Oct. 10, 2018); *Dukuray v. Decker*, No. 18-CV-2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018); *Brevil*, 2018 WL 5993731, at *5; *Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *8 (W.D.N.Y. Nov. 2, 2018). *But see Figueroa v. McDonald*, No. 18-CV-10097 (PBS), 2018 WL 2209217, at *6 (D. Mass. May 14, 2018) (requiring the government to bear the burden, but only by a preponderance of the evidence).

Courts in this district have distilled from the relevant caselaw several factors for assessing when detention in the absence of a bond hearing violates procedural due process: "(1) the length of time the alien has been detained; (2) whether the alien is responsible for the delay; (3) whether the alien has asserted defenses to removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Hernandez*, 2018 WL 3579108, at *7 (citing *Sajous*, 2018 WL 2357266, at *10–11); *see Brissett v. Decker*, 324 F. Supp. 3d 444, 452–53 (S.D.N.Y. 2018); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *4 & n.10 (S.D.N.Y. Aug. 20, 2018); *Lett v. Decker*, No. 18-CV-4302 (JCM), 2018 WL 4931544, at *5 (S.D.N.Y. Oct. 10, 2018); *Dukuray v. Decker*, No. 18-CV-2898 (VB), 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018).[7]

In this case, each one of these factors weighs in favor of finding Joseph's continued detention without a supplemental bond hearing "unreasonable, and thus unconstitutional." *Sajous*, 2018 WL 2357266, at *11. First, Joseph has been detained for over 14 months and expects to be detained for many more, despite an immigration judge's ruling in his favor on the merits in July. This is well beyond both the 6-month timeframe that has generally served as the constitutionality

---

[7] Outside of this district, some courts have opted for the traditional procedural due process test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), balancing the private interest affected by the official action; the risk of an erroneous deprivation of this interest through the current procedures used, and the probable value, if any, of additional procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional procedural requirement would entail. *See, e.g., Soto*, 2018 WL 3619727, at *3–5 (N.D. Cal. July 30, 2018) (applying the *Mathews* framework to assess whether a petitioner's continued detention without a bond hearing violated her procedural due process rights); *Madrigal v. Nielsen*, No. C18-843 (JCC) (JPD), 2018 WL 4732469, at *3 (W.D. Wash. Aug. 31, 2018) (same), *report and recommendation adopted*, No. C18-0843, 2018 WL 4700552 (W.D. Wash. Oct. 1, 2018). The *Mathews* test is consistent with the approach of most other courts in this district in considering immigration-specific factors for the procedural due process analysis, an approach this Court adopts. *See Hechavarria*, 2018 WL 5776421, at *7–9 (W.D.N.Y. Nov. 2, 2018) (relying on the *Mathews* test to find a violation of procedural process where the detainee had not received a bond hearing in the five years he had been detained). This Court would reach the same conclusion utilizing the *Mathews* framework here.

reference point, *see Zadvydas*, 533 U.S. at 701, and the 9-month period that other courts have considered to "strain[] any common-sense definition of a limited or brief civil detention[,]" *see Hernandez*, 2018 WL 3579108, at *8 (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 477 (3d Cir. 2015)).

Second, the delay in this case has been due almost entirely to factors outside Joseph's control. The vast majority of Joseph's detention is due to the Supreme Court's various decisions influencing this case, DHS's failure to engage with Joseph's legal arguments, and DHS's current appeal. *Cf. Hernandez*, 2018 WL 3579108, at *8 (gathering cases where a party's appeal time was considered as delay attributed to that party). First, the Supreme Court has issued two decisions directly relevant to Joseph's case since he has been detained, both of which caused delays. The *Jennings* decision vacated the Second Circuit's requirement that Joseph receive a bond hearing after six months, so he waited an additional month for his initial hearing. *See* Zabbia Decl. ¶ 5. The other cause of delay was the *Dimaya* decision, which, although the immigration judge did not cite it in her decision terminating Joseph's removal proceedings, undermined a substantial basis— if not the only basis—for detaining Joseph, and triggered the most significant cause of delay in this case: DHS's failure to respond to Joseph's arguments that his continued detention was groundless. *See* Second Am. Pet. ¶¶ 63–64. After Joseph's April 24, 2018 bond hearing, DHS responded to Joseph's "urgent" request for a master calendar hearing with a single paragraph stating Joseph remained removable under § 16(a), and assuring the immigration judge it would submit more substantive briefing of this position. As noted above, this briefing never came—not after the immigration judge adjourned the case to give the parties *another* opportunity to provide briefing, and not even after DHS appealed the immigration judge's termination of Joseph's removal proceedings. *See* Status Update of Immigration Proceedings (Dkt. 41-1) (DHS's notice of

appeal). DHS's notice of appeal indicates that it intends to file a separate written brief or statement after filing the notice. *Id.* at 3. Three months have passed and DHS has still not explained why Joseph is removable. DHS's promise, and ultimate failure, to provide opposition briefing to Joseph's arguments in favor of termination is particularly troubling, because "[t]he surest sign of unreasonable detention is unreasonable delay by the Government in pursuing and completing removal proceedings." *Hernandez*, 2018 WL 3579108, at *4. Its current appeal is only the latest factor contributing to a delay which—whether innocent or in bad faith—"cannot fairly be attributed to" Joseph. *Hernandez*, 2018 WL 3579108, at *10; *see also Sajous*, 2018 WL 2357266, at *10 ("If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable.").

Third, Joseph has not only asserted defenses to his removal, he has raised the same ones since November 2017, five months before the Supreme Court confirmed his view that § 16(b) was void for vagueness, and eight months before he received a ruling in his favor on those defenses. This Court lacks jurisdiction to determine whether the immigration judge's ruling was correct as a matter of law, but there is no doubt that its existence increases the chances that Joseph will ultimately be permitted to remain in the United States. *See Hernandez*, 2018 WL 3579108, at *9 (concluding that when defenses are "not frivolous" they weigh in favor of finding detention unreasonable). Joseph's showing under this factor is thus substantially stronger than in any of the cases cited above, *supra* note 6, where the petitioners had stated colorable defenses but had not received favorable rulings on their defenses. *Cf. Sajous*, 2018 WL 2357266, at *11 (finding, before any immigration court had addressed the merits of the petitioner's defenses, that "[t]he Court need not inquire into the strength of these defenses [as] it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed"). Fourth, Joseph's civil

detention will almost certainly exceed the year he spent in jail absent some relief from this Court. He has already spent over 14 months in detention, and anticipates the BIA appeals process will likely take four or five more, possibly longer. *See* August 20, 2018 Letter at 2 (Dkt. 41). Finally, Joseph is presently detained in a penal county jail under the same conditions as criminal inmates.

These factors, taken together, illuminate the unreasonableness of Joseph's continued detention without a supplemental bond hearing. The present procedures available to Joseph, meanwhile, are highly unlikely to mitigate these due process concerns. Assuming that Joseph is detained under § 1226(c), he is entitled to no procedural protections whatsoever. If he is detained under § 1226(a), he could possibly receive another bond hearing, but only one where he would bear the burden of proof to demonstrate that he was neither a flight risk nor a danger to the community. *See In Re Guerra*, 24 I. & N. Dec. at 40. Joseph received one such bond hearing prior to the immigration judge's assessment that his proceedings should be terminated. At that hearing, the immigration judge considered Joseph's past convictions in assessing his potential dangerousness but did not consider the merits of his petition or his defenses at all. Regardless of whether the immigration judge was right to do so at the time, the fact that he has since been found not-removable cannot be ignored. In light of these changed circumstances, a supplemental bond hearing taking into account the immigration judge's termination of his removal proceedings and placing the burden on the government to demonstrate detention's necessity by clear and convincing evidence is necessary to rectify the ongoing violation of Joseph's procedural due process rights.

Respondents argue that there is no basis for placing the burden of proof on the government in such situations, let alone by clear and convincing evidence, and that "an alien will be in a better position than the Government" to produce evidence and proof with respect to the risks of flight and dangerousness. Resp't Opp. Br. at 21. As to the first point, there is ample basis on which to

place the burden on the Government to justify civil detention by clear and convincing evidence. *See Zadvydas*, 533 U.S at 692 (finding post-final-order custody review procedures deficient because, *inter alia*, they placed burden on detainee); *cf. Foucha*, 504 U.S. at 81–83 (holding statute violated due process in placing burden on detained "insanity acquittee" to prove he was not dangerous in order to be free from continued detention); *Salerno*, 481 U.S. at 750, 752 (upholding pre-trial detention after a "full-blown adversary hearing," where the government met its burden by "clear and convincing evidence"). While the Supreme Court noted in *Jennings* that "nothing in § 1226(a)'s text . . . even remotely supports the imposition" of a clear-and-convincing burden on the Government, 138 S. Ct. at 847, this case is not merely about bond procedures under § 1226. Rather, it is about who should bear the burden of proof when, as a constitutional matter, continued detention without a bond hearing has become unreasonable.

Perhaps this explains why the "overwhelming majority" of courts have concluded, post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainees' fundamental liberty interests. *Martinez*, 2018 WL 5023946, at *5; *see Sajous*, 2018 WL 2357266, at *12 (imposing a "clear and convincing evidence" burden on the Government at the bond hearing after prolonged detention); *Perez*, 2018 WL 3991497, at *6 (same); *Hernandez*, 2018 WL 3579108, at *11 (same); *Dukuray*, 2018 WL 5292130, at *5 (same); *Lett*, 2018 WL 4931544, at *6 (same); *Brissett*, 324 F. Supp. 3d at 453–54 (same); *Darko v. Sessions*, No. 18-CV-5675 (ER), 2018 WL 5095671, at *5 (S.D.N.Y. Oct. 19, 2018) ("[T]here has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified."); *Brevil*, 2018 WL 5993731, at *4 ("[A]n individual faces the potential for extended detention, making the effect of an initial bail

27

determination so significant that a mere preponderance of the evidence standard would be insufficient to safeguard the individual's liberty interests."); *cf. Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *6 (S.D.N.Y. Aug. 7, 2018) (requiring the petitioner to show changed circumstances by a preponderance of the evidence at his second bond hearing, after DHS had shown he was a flight risk and a danger to the community by clear and convincing evidence—pursuant to *Lora*—at his first bond hearing).

The Court is persuaded that the reasoning in those cases applies even more forcefully here in light of the immigration judge's termination of Joseph's removal proceedings. Two courts—the Supreme Court and the immigration court reviewing Joseph's case—have now weighed in on the statutory basis for classifying Joseph's crime of conviction as a "crime of violence," and together they have undermined the two bases for classifying his crime as such. The Supreme Court held in *Dimaya* that "'[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause [of 8 U.S.C. § 16]' violates the guarantee of due process." *Dimaya*, 138 S. Ct at 1214 (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015)). With only § 16(a) remaining to potentially classify Joseph's past conviction as a crime of violence, the immigration judge addressed whether his crime "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Decision and Order of the Immigration Judge at 2 (quoting 8 U.S.C. § 16(a)). The court found that it did not, and that Joseph had thus not committed a crime of violence. *Id.* The Court is aware of no other evidence the immigration judge considered in finding Joseph a danger to the community besides the existence of this past conviction, which has now been adjudged not to be a crime of violence. Shifting the burden of

proof to the Government could make a significant, practical difference in light of these changed circumstances.

Respondents' second point, that aliens have more information with respect to their dangerousness and risk of flight, may well be right in a general sense. But that concern is outweighed here. The due process rights of lawful permanent residents detained after having been found not-removable are so at risk that the government must justify their continued detention. "[I]t is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant." *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011).

Respondents alternatively argue that "a rule placing the burden of proof on the Government at immigration bond hearings would run counter to the nation's constitutional scheme, which vests control over matters of immigration and naturalization in the political branches of the government." Resp't Opp. Br. at 22 (alterations omitted). But in this case the "political branches" have, at least in a non-final way, spoken within that constitutional scheme: the immigration judge's ruled that Joseph's proceedings should be terminated.

Finally, Respondents argue that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." Resp't Opp. Br. at 22 (quoting *Demore*, 538 U.S. at 528). But Respondents overlook that there is a serious risk here that Joseph is not a "deportable alien" at all. *Cf. Demore*, 538 U.S. at 514, 522–23 (noting that the alien in *Demore* had "conced[ed] that he was deportable" and did not raise any challenge to his deportability under § 1226(c) in his habeas corpus challenge to the statute). It bears repeating that, in the event the government cannot meet its burden, Joseph may still be released with conditions, and he may be required to post a bond—he has no constitutional

entitlement to "liv[e] at large." *Zadvydas*, 533 U.S. at 696. It is up to the immigration judge to make those determinations, balancing the relevant factors and considering the impact of the termination of Joseph's proceedings. This Court need not create a categorical rule applying to all detainees who succeed before an immigration judge. Rather, this Court has adopted a careful fact-specific approach to assess the need for a supplemental bond hearing pursuant to the procedural due process analysis above. Under the specific circumstances of this case, Joseph is entitled to a fresh determination of the reasons for his detention. And the government must clearly demonstrate that those reasons are good ones.

## CONCLUSION

For these reasons, Joseph's Second Amended Petition is granted in part and denied in part. Respondents shall take Joseph before an immigration judge within seven days of this order for an individualized bond hearing, or immediately release him. At that bond hearing, the government shall bear the burden of proving by clear and convincing evidence that Joseph's continued detention is reasonably related to valid immigration purposes, particularly in light of the immigration judge's termination of the proceedings against him. The immigration judge shall consider, among other things, whether alternatives to detention may serve those purposes. *See Perez*, 2018 WL 3991497, at *6 (citing *Hernandez*, 2018 WL 3579108, at *12).

In light of this conclusion, Joseph's request for immediate release pending this decision are denied as moot. *See* Oral Arg. Trans. at 22.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:     November 21, 2018
          New York, New York

Ronnie Abrams
United States District Judge

30